In its Opinion and Award, the majority modifies and affirms the Deputy Commissioner's denial of plaintiff's workers' compensation benefits. I respectfully dissent.
Current case law holds that when a pre-existing, non-disabling disease is aggravated or accelerated by work-related conditions such that disability results, the employee is compensated under the Act. Walstonv. Burlington Industries, as amended, reads, in pertinent part: "Disability caused by and resulting from a disease is compensable when, and only when, the disease is an occupational disease, or is aggravated or accelerated by causes and conditions characteristic of and peculiar to claimant's employment." 305 N.C. 296, 297 (1982). Wilkins v. J.P. Steven Co. further sharpens the requirement for compensability in this setting: "[I]t must be shown factually that but for workplace aggravation of the non-occupational disease there would not have been the same incapacity for work for which compensation is sought." 333 N.C. 449, 454
(1993). Although it is a case involving disease accelerated by an injury by accident rather than by occupational disease conditions, Brown v.Family Dollar Distrib. Ctr. clearly enunciates a nearly identical standard: "Our courts have held that when an accident arising out of employment materially accelerates or aggravates a pre-existing condition and proximately contributes to disability, the injury is compensable."129 N.C. App. 361, 364 (1998). Furthermore, Rutledge v. Tultex Corp.,308 N.C. 85, 101 (1983) requires the workplace conditions provide "exposure [that] significantly contributed to, or was a significant causal factor in, the disease's development." 308 N.C. 85, 101 (1983).Wilkins v. J.P. Steven Co. restates this requirement. 333 N.C. 449, 453
(1993).
In the case at hand, there is substantial medical evidence showing that plaintiff had pre-existing osteoarthritis in both knees predating his long employment history with defendant. However, plaintiff testified that he had no knee pain or physical restrictions because of his knees until the year before his first surgery, which was well over a decade after he started work for defendant. Dr. Friedrich testified that the strenuous nature of plaintiff's employment with defendant caused an acceleration of plaintiff's pre-existing osteoarthritis to the point that the condition was disabling to plaintiff. Dr. Friedrich testified more specifically that the employment with defendant, due to its strenuous nature, put plaintiff at an increased risk of suffering an aggravation of his osteoarthritis as compared to members of the general public. The requirements for compensability set forth in Walston and Brown are met through the testimony of plaintiff and Dr. Friedrich.
The evidence of record establishes that most of plaintiff's job tasks involved cutting and drilling concrete. Cutting and drilling concrete required plaintiff to kneel and squat close to the ground repeatedly. Plaintiff was sometimes required to walk up and down stairs and ladders carrying his heavy cutting and drilling equipment as well as physically remove concrete slabs he had cut. Removing the slabs involved prying and lifting the concrete up from a kneeling or squatting position.
Dr. Friedrich's testimony specifically meets all the elements required for the compensability of this case under the existing case law. The majority's assertion that plaintiff's job with defendant did not hasten the underlying disease process is not accurate. While employed with defendant, doing work obviously strenuous to his knees, plaintiff's condition progressed from giving him no pain whatsoever to the point that plaintiff could not work and received surgical knee replacements in both legs. It is worth stating again that Dr. Friedrich testified that plaintiff's strenuous work duties with defendant aggravated and accelerated plaintiff's condition such that it required surgery and disabled plaintiff. Furthermore, Dr. Friedrich equivocated and stated that plaintiff might not have eventually undergone the surgery had he not held the concrete drilling and cutting job. The portion of the majority's Finding of Fact 14 stating otherwise is without basis. When the testimony of Dr. Friedrich is considered in full, plaintiff meets even the heightened standard of compensability set forth in Wilkins.
It is a long-established principle that the Workers' Compensation Act is not to be interpreted narrowly or technically. In this case, the majority subjects the pertinent case law regarding this topic to such a narrow and technical interpretation. It is not feasible to require a plaintiff to prove that a condition that is by definition "pre-existing" was caused by conditions subsequent to employment. In the case at hand, due to the nature of his pre-existing disease, plaintiff cannot possibly prove that his pre-existing osteoarthritis was caused by workplace conditions if the requirements of Rutledge and Wilkins are applied technically. Moreover, in Findings of Fact 14 and 15, the majority technically applies the previously cited, negatively constructed "but for" test set forth in Wilkins v. J.P. Steven Co. 333 N.C. 449, 454
(1993). The majority applies this remarkable test and requires plaintiff to prove that but for the workplace conditions, plaintiff would not have eventually become disabled. This is an impossible standard that would immediately defeat all plaintiffs faced with this area of the law. How can any plaintiff with a pre-existing disease prove this negative?
The causation standard the majority imposes is analogous to requiring a plaintiff in an ordinary Carpal Tunnel Syndrome case to prove that he or she would not have been disabled by Carpal Tunnel Syndrome but for the employment in question. Proving a negative in any situation is extremely difficult, but because individuals can and do become disabled by Carpal Tunnel Syndrome in various ways apart from employment, no claimant would be able to meet this negative "but for" standard. No plaintiff, certainly not one in a workers' compensation environment, should be subjected to such a narrow, if not unattainable, burden of proof.
In its Conclusion of Law 5, the majority goes on to apply technically the Rutledge rationale and finds that a radical increase in plaintiff's pain due to work conditions necessitating bilateral knee replacements and causing disability is not sufficient to meet compensability requirements. The majority finds that plaintiff must demonstrate further development of the osteoarthritis disease, not merely an increase in pain, due to work conditions in order to prevail. The majority's reasoning is deficient due to the unique nature of osteoarthritis. Dr. Friedrich testified that surgery would not be recommended to an osteoarthritis patient based on an objective test such as an x-ray, and that a patient's pain would be determinative of a doctor's recommendations.
Osteoarthritis is a pain-driven condition, and pain necessarily controls the treatment, disability, and surgical intervention of osteoarthritis sufferers. Given the nature of osteoarthritis, no plaintiff could ever meet the majority's requirement to show objective medical degeneration requiring surgery, because no such objective evidence could ever be produced in an osteoarthritis case. The majority's requirement that plaintiff demonstrate objective osteoarthritis progression for recovery would exclude all osteoarthritis patients from recovery in this paradigm. There is no basis for such an exclusion in the Act or in the case law. The majority's opinion works to eliminate an entire class of plaintiffs.
Given the very arduous standard required for compensation of this type of case, a case such as this one that does meet the requirements articulated by the case law must be held compensable to prevent the walls of this narrow, yet legitimate alleyway to compensation converging into themselves and abandoning plaintiffs in a judicially-created dead end in contravention of the intent of the Act.
For the foregoing reasons, I must respectfully dissent from the majority in this case.
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER